

**IT IS ORDERED as set forth below:**

**Date: October 10, 2017**

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**
_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: | CASE NUMBER |
| **1278 VILLAGE RUN TRUST**, | **17-59905-PMB** |
| Debtor. | CHAPTER 7 |
| **WELLS FARGO BANK, N.A. AND U.S. BANK NATIONAL ASSOCIATION**, | |
| Movant, | |
| v. | CONTESTED MATTER |
| **1278 VILLAGE RUN TRUST**, | |
| Respondent. | |

### ORDER (I) DENYING DEBTOR'S MOTION TO SET ASIDE FORECLOSURE SALE AND (II) GRANTING MOVANT'S MOTION FOR AN ORDER ANULLING AUTOMATIC STAY NUNC PRO TUNC TO FILING DATE

This case was filed on June 5, 2017 (the "Filing Date"). On June 30, 2017, the Debtor filed a *Motion to Set Aside Foreclosure Sale* (Docket No. 12)(the "Motion to Set Aside").[1] On July 26,

---

[1] On June 13, 2017, the Trustee filed *Debtor's Motion to Reimpose Stay pro se* (Docket No. 7)(the "Trustee's Motion"). Trustee's Motion was supplemented by the Motion to Set Aside. This Order resolves both motions.

2017, this Court, after an evidentiary hearing, entered an Order (Docket No. 23)(the "Prior Order") dismissing this case because the Debtor is not an eligible debtor under 11 U.S.C. § 109.[2] The Court in the Prior Order retained jurisdiction to determine any issues regarding the automatic stay in this case, including any resolution of the Motion to Set Aside.[3]

On September 1, 2017, Wells Fargo Bank, N.A. and U.S. Bank National Association (collectively, "Movant") filed a *Motion for An Order Confirming No Automatic Stay Is In Effect, Or In The Alternative, Motion For Relief from the Automatic Stay Nunc Pro Tunc* (Docket No. 40) (the "Stay Motion"; with the Motion to Set Aside, collectively, the "Motions"). On the same day, the Debtor filed a *Brief to [sic] Support of Motion to Set Aside Foreclosure Sale* (Docket No. 41).

The Court held an evidentiary hearing on the Motions on September 25, 2017, at 1:30 p.m. (the "Hearing"). The Debtor was represented at the Hearing by its counsel and by D. Michelle Smith, the trustee of the Debtor trust (the "Trustee"). Movant was represented at the hearing by counsel. Also represented by counsel at the Hearing was Robin Warren Properties, an entity that claims to have purchased the property located at 1278 Village Run, Brookhaven, Georgia (the "Property") at a foreclosure sale conducted by Movant on June 6, 2017 (the "Foreclosure Sale"). Two (2) witnesses testified at the Hearing – the Trustee and Matthew Suber ("Mr. Suber"), an attorney with the law firm of Aldridge Pite, LLP ("AP").

---

[2] On February 22, 2017, this Court dismissed a prior Chapter 7 case filed by the Debtor (the "Prior Case") for the same reason, among others. See Bankr. Case No. 17-50106, Docket No. 20. On March 15, 2017, this Court denied a motion by the Debtor in the Prior Case to vacate that dismissal and reinstate the case (Prior Case, Docket No. 26).

[3] By Order entered August 23, 2017 (Docket No. 37), the Court denied a motion by the Debtor to reconsider dismissal (Docket No. 25). By a second Order entered that same day (Docket No. 36), the Court denied Debtor's request to state that the automatic stay remained in the place or to re-impose the stay (Docket No. 35).

FINDINGS OF FACTS AND CONCLUSIONS OF LAW[4]

There is no dispute that Movant conducted the Foreclosure Sale on June 6, 2017, while the automatic stay of 11 U.S.C. § 362(a) was in effect in this case.  The Debtor asserts that the Foreclosure Sale is void as a result.[5]  Movant admits that it violated the automatic stay by conducting the Foreclosure Sale, but asserts that the Court should annul the stay *nunc pro tunc* to the Filing Date, citing to In re Howard, 391 B.R. 511 (Bankr. N.D. Ga. 2008), because (i) Movant was unaware of the bankruptcy filing when it conducted the Foreclosure Sale, (ii) the Debtor's conduct in this case, the Prior Case, and with respect to the loan secured by the Property (the "Loan") has been inequitable, and (iii) there is no equity in the Property that could benefit either the Chapter 7 estate or the Debtor.

The Debtor, both at the Hearing and in its brief, directed the Court to In re Cruz, 516 B.R. 594 (9th Cir. BAP 2014).  The Debtor asserted that Cruz stands for the proposition that Movant was required to act immediately to seek *nunc pro tunc* relief, and having failed to do so, is foreclosed from obtaining that relief.  Rather than standing for that proposition, however, Cruz utilizes the same two (2) focus points as Howard (i.e. notice and inequitable conduct), but then provides a non-exhaustive list of twelve (12) additional factors to be considered in connection with a request for *nunc pro tunc* relief.  Cruz, at 603-604.  Two (2) of those factors, numbers 9 and 10, include the timeliness of the request.  Cruz, at 604.  Otherwise, the test set forth in Cruz is not materially different from the method of analysis outlined in Howard.

This Court agrees with Howard and Cruz that requests to annul the stay are *sui generis*, and require a close examination of all of the facts.  Important to that examination, but not by

---

[4] This Order constitutes findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.  Where appropriate in this Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

[5] The Debtor is correct, and Movant does not deny, that if the stay is not annulled, the Foreclosure Sale is void and the Motion to Set Aside will effectively have been granted (and would be granted).  Consequently, this Order focuses entirely on the Stay Motion, since the grant or denial of that motion resolves both Motions.

3

themselves determinative, are whether the party requesting the annulment was aware of the stay, and whether the debtor has engaged in inequitable conduct. Cruz, at 603; Howard, at 518. In the end, the Court has to "balance the equities", or look at the "totality of the circumstances", to determine whether the stay should be annulled *nunc pro tunc*.

*Notice*

As to the issue of notice of the bankruptcy filing, the evidence presented at the Hearing is in equipoise. The Trustee testified that she called AP, the law firm that conducted the Foreclosure Sale, between 8:30 and 9:00 a.m. on the day of the Foreclosure Sale (June 6) to advise AP, as counsel for Movant, that the Debtor had filed for bankruptcy protection the day before (on June 5). She presented telephone records that showed those calls, one of which was thirteen (13) minutes long (the others were much shorter). By contrast, Mr. Suber testified that AP schedules approximately three hundred (300) foreclosure sales per month, only proceeds with about half of those (i.e. reschedules or otherwise does not proceed with the other half), and has procedures for addressing telephone calls received on foreclosure day in which a borrower claims to have filed for bankruptcy protection. Those procedures require the telephone call to be routed to Mr. Suber (or one of his attorney colleagues if he is not available), and noted in AP's records. No such call was routed to Mr. Suber. Based on AP's records, Mr. Suber testified that the Trustee did call AP at around 8:30 a.m. on June 6 but only mentioned a state court lawsuit in that call. That was followed by an e-mail from the Trustee at around 8:45 a.m. with a copy of a state court complaint attached. Mr. Suber further stated that the first time that AP was advised of a bankruptcy filing was at 11:03 a.m., when AP received an e-mail from the Trustee with the filing information attached. By that time, the Foreclosure Sale, which occurred between 10:32 and 10:42 a.m., had already been cried and the Property sold.

The same e-mails from the Trustee to AP were presented by both Movant and the Debtor. They showed an e-mail of the state court lawsuit around 8:45 a.m. on June 6 and an e-mail of the

4

bankruptcy information just after 11:00 a.m. that same day, all consistent with AP's records. The Trustee explained that she sent those documents at those times because that is what the person at AP that she spoke to (not Mr. Suber) asked for at those times.

The evidence presented did not resolve the question of whether Movant had notice of the bankruptcy filing before the Foreclosure Sale. It is possible that the Trustee initially did not mention the bankruptcy filing, and only mentioned it later – but that seems unlikely, given that this case was filed just the day before and should have been the reason for the calls. On the other hand, it does not seem likely that a professional foreclosure firm like AP that was advised of a bankruptcy filing would proceed in the face of the filing, and Mr. Suber testified that it would not have. Both witnesses were credible. Consequently, it is not clear from the evidence presented whether Movant had notice of the filing of this bankruptcy case at the time the Foreclosure Sale took place.

*Conduct of the Debtor*

The issue of the conduct of the Debtor militates in favor of Movant. Although the Trustee testified that Movant induced her to default on the Loan[6] in 2009 and has not adequately assisted her since that time in pursuing a modification of the Loan,[7] it is undisputed that the Debtor has made few payments on the Loan since 2009, and none since 2011. The Trustee lives in the Property, and has since 2004, so she has occupied the Property for almost six (6) years without making any payments on the Loan.

---

[6] The documents for the Loan were admitted into evidence without objection, and show a loan of $414,100 secured by the Property that was made on December 9, 2004. That Loan was scheduled to mature in January of 2035, bore interest at a non-default rate 6.25%, and required monthly principal and interest payments of $2,526. That Loan was entered into initially by the Trustee in her individual capacity. She later transferred the Property, subject to the Loan, to the Debtor.

[7] To the extent that Movant's conduct results in claims in favor of the Trustee individually or the Debtor, the evidence at the Hearing showed that there is a presently pending lawsuit that asserts those claims. Consequently, to the extent those claims have validity, they will be addressed elsewhere. This Order does not address the validity of those claims, nor does it address the validity of the Foreclosure Sale under applicable nonbankruptcy law.

Further, when Movant finally scheduled a foreclosure sale for the first Tuesday in January, 2017, the Trustee filed a *pro se* Chapter 7 bankruptcy case on behalf of the Debtor. When that bankruptcy case was dismissed because this Court determined that the Debtor was not an eligible Chapter 7 debtor and the Debtor, an entity, was not represented by counsel, and Movant advertised a second foreclosure sale for June 6, 2017, the Trustee filed this Chapter 7 case, again *pro se* and with precisely the same infirmities as the first case.[8] These facts support the grant of the relief requested by Movant in the Stay Motion.

*Equity in the Property*

Based on the evidence presented, there is no equity in the Property over and above the amount of the Loan. The Debtor admitted as much in a letter she sent to the Movant in May of 2017 suggesting, among other things, that the Loan could be resolved by a "short sale", a term that means that the Property would not sell for enough to pay the Loan in full.[9] It is no surprise that there is no equity in the Property, however, given that over $200,000 in interest on the $414,400 Loan would have accrued since the Debtor stopped making regular payments in 2009.[10] Based on the evidence presented, the amount of the Loan exceeds $500,000, and may be closer to $600,000. The Debtor scheduled the Property value at $430,000. That lack of equity[11] also means that, had Movant come to the Court on June 6 and requested immediate relief from the automatic stay to conduct the

---

[8] On July 11, 2017, counsel did appear in this case on behalf of the Debtor, resolving one (1) of the two (2) infirmities from the Prior Case.

[9] The testimony of the Trustee regarding the meaning of "short sale" in the letter, which suggested she did not know what this term means, was not credible, especially in light of her professed experience in commercial real estate.

[10] The original loan amount of $414,100, less the relatively nominal amortization that would occur in the first five (5) years of a thirty (30) year loan, times the non-default interest rate on the note of 6.25%, is roughly $25,000 a year in interest for eight (8) years. These amounts are ascertainable from the loan documents, which were admitted into evidence at the Hearing, and the testimony of the Trustee regarding payments made and not made.

[11] A lack of equity is also supported by information provided by counsel for the Robin Warren Properties, who advised the Court in argument that his client had paid $459,000 for the Property at the Foreclosure Sale. That value is less than the amount owed that is secured by the Property. See *infra*. However, because the amount paid at the Foreclosure Sale was not admitted into evidence, the Court does not rely on this observation in this Order.

6

Foreclosure Sale that day, the request would likely have been granted.[12] These facts also support the grant of the relief requested by Movant in the Stay Motion.[13]

*Goals of the Debtor*

Finally, there is the question of whether the Trustee has any hope of achieving in a bankruptcy setting the goals that she has - to retain the Property and reorganize the Loan. In filing a Chapter 7 case, the Debtor has foreclosed the possibility of doing either of those things here. Chapter 7 does not contemplate a reorganization and generally does not permit the retention of secured property in the absence of reaffirmation by the Debtor of the related secured debt,[14] which does not appear possible here. If retention of the Property and reorganization of the Loan were the goals, a Chapter 11 or Chapter 13 case would have been the appropriate vehicle.[15] The Trustee did not pursue a reorganization case, and the time for her to have done so has now passed.

In light of the foregoing, it is hereby **ORDERED** that the Motion to Set Aside is **DENIED**; and it is further

**ORDERED** that the Stay Motion is **GRANTED**, and the automatic stay is hereby ANULLED *nunc pro tunc* to the Filing Date.

---

[12] The criteria for that request would have been either (a) "cause" (which appears to exist based on the conduct of the Debtor and the Trustee) or (B) (i) the Debtor lacks equity in the Property (which again appears to exist) and (ii) the Property is not necessary for an effective reorganization (which is presumed in a Chapter 7 case, where no reorganization is possible). See 11 U.S.C. §§ 362(d)(1), (d)(2).

[13] Other facts supporting the grant of the Stay Motion include the fact that if the Stay Motion is denied, Movant can simply commence a new foreclosure sale (because this case has been dismissed and there is no stay in place), which would burden Movant with additional cost, expense and delay and would not advantage the Debtor materially as the end result would be the same. Also supporting the grant of the Stay Motion is the fact that the Property was purchased at the Foreclosure Sale by a third party buyer who would be prejudiced by a failure to annul the stay.

[14] See 11 U.S.C. § 523(c).

[15] If the Court is correct (as it has ruled twice) that the Debtor is not an eligible bankruptcy debtor, a Chapter 11 or 13 case should have been pursued by the Trustee individually, after conveying the Property back to herself. If the Debtor is an eligible debtor, then the Debtor should have pursued a Chapter 11 case, not a Chapter 7. Nothing in the foregoing is intended to suggest that the Court believes that any of those reorganization cases would necessarily have succeeded, or that they would be appropriate at this time.

7

The Clerk is directed to serve this Order and Notice on the Debtor, Debtor's Counsel, Respondent, Respondent's Counsel, the Chapter 13 Trustee, all creditors, and all parties in interest in this case.

**[END OF DOCUMENT]**